```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
              Civil No. 13-3499(DSD/FLN)
```

Residential Funding Company, LLC,

       Plaintiff,

v.                                                              **ORDER**

Mortgage Access Corp., doing
business as Weichert Financial
Services

       Defendant.

    David Elsberg, Esq. and Quinn, Emanuel, Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, NY 10010 and David L. Hashmall, Esq. and Felhaber Larson, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Greg W. Chambers, Esq., American Mortgage Law Group PC, 75 Rowland Way, Suite 350, Novato, CA 94945 and Carol R.M. Moss, Esq. and Hellmuth & Johnson, PLLC, 8050 West 78th Street, Edina, MN 55439, counsel for defendant.

    This matter is before the court upon the motion to dismiss the amended complaint by defendant Mortgage Access Corporation, doing business as Weichert Financial Services (Mortgage Access). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

## BACKGROUND

    This business dispute arises out of the sale of Mortgage Access-underwritten mortgage loans to plaintiff Residential Funding Company, LLC (RFC). RFC is a business engaged in the acquisition

and securitization of residential mortgage loans. Am. Compl. ¶ 2. RFC acquired loans from correspondent lenders, such as Mortgage Access, who were responsible for collecting and verifying borrower information and underwriting the loan. Id. ¶ 20. Once underwritten, loans were sold to RFC and then distributed in pools to be sold into residential mortgage-backed securitization (RMBS) trusts or to whole loan purchasers. Id. ¶ 3.

Mortgage Access and RFC entered into a "Seller/Servicer Contract" (Contract), which incorporated by reference the "Seller and Servicer Guides." See, e.g., id Ex. A, at 1. RFC alleges that the Seller and Servicer Guide referenced in the Contract is equivalent to the "Client Guide," and that the Contract and Client Guide collectively formed the parties' agreement (Agreement). See Am. Compl. ¶ 18 (noting that different versions of relevant Guides existed over time). Pursuant to the Contract, Mortgage Access made several representations and warranties regarding the loans sold to RFC. See id. ¶ 24. Failure to comply with such representations and warranties by Mortgage Access constituted an "Event of Default" under the Agreement. See id. ¶ 26. Further, the Agreement specified the remedies available to RFC if an Event of Default occurred, including Mortgage Access's obligation to indemnify RFC against liabilities resulting from such events. See id. ¶ 29.

Mortgage Access and RFC operated pursuant to the Agreement until May 2012. See id. ¶ 2. Over time, many of the loans sold by

2

Mortgage Access went into default or became delinquent, resulting in losses to RFC in excess of $21 million. Id. ¶ 39. Mortgage Access repurchased some defective loans pursuant to the Agreement. Id. ¶ 44. RFC was sued in numerous actions stemming from defective loans it had re-sold. See id. ¶ 48. RFC filed for Chapter 11 bankruptcy protection on May 14, 2012. See ¶ 49. On December 17, 2013, the bankruptcy plan became effective. Id. ¶ 76.

On March 25, 2014, RFC filed an amended complaint,[1] alleging claims for (1) breach of warranties and (2) indemnification. Mortgage Access moves to dismiss.

## DISCUSSION

### I. Standard of Review

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v.

---

[1] On March 4, 2014, Mortgage Access moved to dismiss the complaint. Thereafter, RFC filed an amended complaint. See ECF No. 36. As a result, the motion to dismiss the original complaint will be denied as moot.

3

Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record, some materials that do not contradict the complaint, exhibits attached to the complaint and materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the Contract, Client Guide excerpts and list of loans submitted by RFC are attached to the amended complaint and are properly before the court.

## II.  Breach of Warranties

To state a claim for breach of warranties,[2] a plaintiff must allege the existence of a warranty, a breach of the warranty and a causal link between the breach and the alleged harm.[3]  See Hendricks v. Callahan, 972 F.2d 190, 193 (8th Cir. 1992) (applying Minnesota law).  Further, RFC must likely allege reliance on the warranty.[4]  See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.,

---

[2] The heading of the first claim characterizes it as a breach of contract claim.  Mortgage Access argues that such a claim is solely one for breach of contract and cannot be interpreted to allege a breach of warranty claim.  A breach of warranty claim, however, "*is* a breach of contract claim." Bluewater Yacht Sales, Inc. v. Liberty Coach, Inc., No. 07-3039, 2009 WL 1684454, at *4 (W.D. Ark. June 12, 2009) (emphasis added); see also Malone v. Husker Auto Grp., Inc., No. 4:08CV3199, 2008 WL 5273670, at *4 (D. Neb. Dec. 17, 2008) ("[T]he label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." (citation and internal quotation marks omitted)).  Indeed, RFC states that it does not assert a general breach of contract claim.  See Mem. Opp'n 8.  As a result, the court looks to the substance of the claim and concludes that RFC asserts a claim for breach of warranty, rather than a general breach of contract claim.

[3] Mortgage Access also argues that RFC lacks standing because it fails to plead "manifestation of the defect."  Reply Mem. 11.  Such an argument, however, relates to implied warranties and consumer products, rather than express contractual warranties.  See, e.g., O'Neil v. Simplicity, Inc., 574 F.3d 501, 503 (8th Cir. 2009).  Mortgage Access points to no factually-similar authority requiring such an element to state a claim for breach of warranties.  As a result, such an argument is without merit.

[4] The Minnesota Supreme Court has recently held that "breach of a contractual representation of future legal compliance [is] actionable under Minnesota law without proof of reliance."  See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co., No. A-13-1944, 2014 WL 2965404, at *3 (Minn. July 2, 2014).  The court declined to reach the issue of whether proof of reliance is

(continued...)

5

No. A13-1944, 2014 WL 2965404, at *4 (Minn. July 2, 2014); Midland Loan Fin. Co. v. Madsen, 14 N.W.2d 475, 481 (Minn. 1944) ("To enable a party relying upon breach of ... warranty to recover, it must be clear and definite that there was actual reliance upon the warranties involved."). Mortgage Access argues that RFC has failed to state a claim for breach of warranties because it (1) fails to adequately specify the warranties at issue, given the multiple versions of the Client Guide and (2) fails to specifically allege the breaches, loans and damages at issue.[5]

### A. Warranties

Mortgage Access argues that it does not have fair notice of the claim. Specifically, Mortgage Access argues that the amended complaint does not specify which version of the Client Guide applies to each allegedly-defective loan. A complaint must provide "fair notice of what the ... claim is and the grounds upon which it rests." Twombly, 550 U.S. at 556 (alteration in original) (citation and internal quotation marks omitted). RFC responds that

---

(...continued)
required in breach of warranties claims. See id. at *4 n.6. As a result, the court assumes the continuing viability of the rule announced in Midland Loan Fin. Co. v. Madsen, 14 N.W.2d 475, 481 (Minn. 1944).

[5] Mortgage Access also argues that dismissal is warranted because RFC does not allege that it performed requisite conditions precedent or that the alleged breaches were material in nature. Allegations of materiality and that conditions precedent were performed are not necessary, however, as neither is an element of a breach of warranties claim. See Hendricks, 972 F.2d at 193.

Mortgage Access has sufficient notice of the allegedly-breached warranties because it has attached relevant excerpts from the Client Guide, and that any omitted portions are irrelevant to its claim. The court agrees.

Here, RFC alleges breach of several specific provisions of the Client Guide. <u>See</u> Am. Compl. ¶ 18. Specifically, RFC cites numerous warranties and representations made by Mortgage Access, including, among others, (1) the legality of loan origination, servicing and transfer, <u>id.</u> Ex. B-2, at §§ A201(K), A202(I); (2) the obligation to promptly notify RFC of any act or omission materially affecting the loans or mortgagor, <u>id.</u> at § A201(M); (3) the accurate and proper execution of all loan documents, <u>id.</u> at §§ A202(A),(D); and (4) the absence of any default, breach, violation or event of acceleration relating to any transferred note or security instrument, <u>id.</u> at § A202(G). <u>See</u> Am. Compl. ¶ 24. Although multiple versions of the Client Guide exist and certain portions have been omitted, RFC alleges that the omitted excerpts of the Client Guide are not material. <u>See id.</u> ¶ 18. Further, RFC specifically alleges that "[t]he Contract and Client Guide collectively form the parties' Agreement" and, for purposes of the instant motion, the court accepts such an assertion as true. RFC has identified the warranties at issue and, as a result, the argument that RFC failed to adequately plead such warranties is without merit.

### B. Breaches, Causal Link and Reliance

Mortgage Access next argues that RFC fails to enumerate each allegedly defective loan in the amended complaint, rendering Mortgage Access "unable to determine basic facts of RFC's claim such as which loans were defective, how those loans were defective, what portions of the parties' contract was allegedly breached, and how [RFC] was allegedly harmed." Mem. Opp'n 12. Such an argument is unavailing.

The amended complaint, while not a model of clarity, alleges facts sufficient to put defendants on notice of the breach of warranties claim. Rule 8(a) requires only that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "This is both a floor and a ceiling: Rule 8 can be violated by a complaint that pleads too little and by a complaint that pleads too much." Wright v. Medtronic, Inc., No. 09-0443, 2010 WL 1027808, at *13 (D. Minn. Mar. 17, 2010). Here, Mortgage Access points to no factually-similar authority holding that RFC is obligated to plead its claims on a loan-by-loan basis. But cf. Ace Sec. Corp. Home Equity Loan Trust v. DB Structured Prods., Inc., Nos. 13-1869, 13-2053, 13-2828, 13-3687, 2014 WL 1116758, at *12-13 (S.D.N.Y. Mar. 20, 2014) (allowing pleading to survive dismissal without loan-by-loan

allegations in a complaint, but noting that Rule 8(a) "does not relieve Plaintiff of its burden of proving loan-by-loan breaches at later stages of litigation").

Further, RFC has sufficiently alleged breach of the warranties. Specifically, RFC pleads that Mortgage Access breached warranties "by delivering loans that were not originated or underwritten in accordance with the requirements of the Agreement; did not meet the representations and warranties made as to those loans; and/or failed to comply with applicable state and federal law." Am. Compl. ¶ 38. RFC further supports such allegations of breach by pleading (1) that many of the loans Mortgage Access sold to RFC defaulted shortly after the loans closed or performed significantly worse than would be expected in the absence of breach, id. ¶ 42, (2) that internal RFC reviews found defects in many Mortgage Access loans, id. ¶ 41, (3) that it was obligated to repurchase many of the Mortgage Access loans it had re-sold after the discovery of loan defects, id. ¶¶ 53, 68, and (4) that, following numerous lawsuits with non-parties and the filing of hundreds of creditors' proofs of claims in its own bankruptcy proceeding, it has been shown that RFC purchased defective loans from a variety of lenders, including Mortgage Access, id. ¶¶ 47-51, 56. RFC specifically identifies certain allegedly-defective loans and further provides a non-exhaustive "sampling" of other Mortgage

9

Access loans,[6] including those that it claims were defective, which lends further support to the breach allegations for pleading purposes. Id. ¶ 43, id. Ex. C. Moreover, RFC has adequately pleaded a causal link. Specifically, RFC alleges that as a direct result of Mortgage Access's breaches, it was subject to extensive repurchase demands, litigation and financial losses. See Am. Compl. ¶¶ 54, 58, 68. Finally, RFC sufficiently alleges that it relied on such warranties and representations. The Client Guide reflects Mortgage Access's "recogni[tion] that it is [RFC's] intent to securitize some or all of the Loans sold to [RFC] by [Mortgage Access]" and specifically notes that RFC would act "in reliance upon [the] warrant[ies], obligation[s] or representation[s] made by [Mortgage Access] contained in the Client Contract." Id. Ex. A, at §§ A202(II), A212. Indeed, RFC specifically pleads that the warranties at issue were material to its decisions to acquire mortgage loans from Mortgage Access. Am. Compl. ¶ 25. As a result, RFC has sufficiently pleaded a plausible breach of warranties claim, and dismissal is not warranted.

**III. Indemnification**

RFC next alleges a claim for indemnification. Specifically, RFC argues that it incurred damages from the material defects of loans sold by Mortgage Access and that Mortgage Access expressly

---

[6] While such sampling is illustrative for pleading purposes, it is anticipated that RFC will identify specific all allegedly-defective loans in discovery.

10

undertook to indemnify RFC in such circumstances. Mortgage Access argues that dismissal of the indemnification claim is warranted because RFC did not satisfy conditions precedent to seeking indemnification. Specifically, Mortgage Access argues that RFC failed to provide to Mortgage Access "a request for payment, ... includ[ing] copies of the relevant notices" as required the Client Guide.[7] Am. Compl. Ex. A, § A212.

"Indemnity arises out of a contractual relationship, either expressed or implied by law, which requires one party to reimburse the other entirely." Hernick v. Verhasselt Contr., Inc., Nos. CX-02-1424, C0-02-1478, 2003 WL 1814876, at *4 (Minn. Ct. App. Apr. 8, 2003) (citations and internal quotation marks omitted). "A claimant may recover indemnity ... [w]here there is an express contract between the parties containing an explicit undertaking to reimburse for liability of the character involved." Id. at *5 (second alteration in original) (citations and internal quotations omitted).

Here, Mortgage Access argues that § A212 of the Client Guide states that indemnification is contingent on RFC providing Mortgage Access with "a request for payment, which request shall include copies of the relevant invoices." Am. Compl. Ex. B-1, at § A212.

---

[7] Mortgage Access also argues that indemnification claim should be dismissed because RFC never requested repurchase of the allegedly-defective loans. The indemnification provision, however, does not require that RFC make such a request. See Am. Compl. Ex. B-1, at § A212.

11

Even if the Agreement required notice as a condition precedent to indemnification, however, RFC satisfies its pleading burden. See Hartford Fire Ins. Co. v. Pearson Mech. Servs., Inc., No. 10-2818, 2011 WL 3793972, at *3 (D. Minn. Aug. 25, 2011) (listing elements for breach of indemnity agreement claim). In the amended complaint, RFC alleges that it "at all times performed all of its obligations to Mortgage Access, if any, under the Agreement, and all conditions precedent to the relief sought in this action, if any, have been satisfied." Am. Compl. ¶ 35. Such pleading complies with Rule 9(c), which provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."[8] Fed. R. Civ. P. 9(c); see also, e.g., Cummins Law Office, P.A. v. Norman Graphic Printing Co., 826 F. Supp. 2d 1127, 1129 (D. Minn. 2011). As a result, dismissal on this basis is not warranted.

**IV. Statute of Limitations**

    **A. Breach of Warranties**

Finally, Mortgage Access argues that much of the breach of warranties claim is barred by the statute of limitations. Specifically, Mortgage Access argues that any portion of the breach of warranties claim based on loans sold or assigned to RFC prior to

---

[8] Mortgage Access argues that it was not provided with such notices. At this stage in the proceedings, however, the court accepts as true the allegations by RFC that it has satisfied the conditions precedent. See Braden, 588 F.3d at 594.

12

December 16, 2007 - the date six years prior to commencement of the instant action - is untimely due to the six-year statute of limitations for such claims in Minnesota. See Mem. Supp. 15-16. RFC argues that the statute of limitations is tolled due to the application of 11 U.S.C. § 108. The court agrees.

The parties agree that the six-year statute of limitations for contract actions applies to the breach of warranties claim. See Minn. Stat. § 541.05, subidv. 1(1). RFC argues, however, that the filing of the bankruptcy petition on May 14, 2012, extended the statute of limitations. Under 11 U.S.C. § 108(a)(2), "[i]f applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action ... before ... two years after the order for relief." See also 11 U.S.C. § 1107(a) (providing that a Chapter 11 debtor-in-possession enjoys most rights possessed by trustees); In re Martinson, 731 F.2d 543, 544 n.2 (8th Cir. 1984); Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 278 n.11 (8th Cir. 1983). Thus, § 108 renders timely the portion of the breach of warranties claim relating to loans sold or assigned after May 14, 2006 - the date six years prior to the filing of the bankruptcy petition. See Residential Funding Co., LLC v. Embrace Home Loans,

Inc., Nos. 13-3457, 13-3509, 13-3545, 2014 WL 2766114, at *4 (D. Minn. June 18, 2014). As a result, dismissal is not warranted as to those loans sold or assigned after May 14, 2006.

The portion of the breach of warranties claim relating to loans sold or assigned prior to May 14, 2006, however, is untimely. RFC argues that it has sufficiently pleaded that Mortgage Access breached a continuing warranty to provide RFC with certain material information regarding the loans it had sold, such that the claims accrued after the time of underwriting and that, as a result, such claims are timely. The court disagrees. Here, RFC alleges that, pursuant to the Client Guide, Mortgage Access undertook to

> comply with all provisions of this Client Guide and the Program Documents, and will promptly notify [RFC] of any occurrence, act, or omission regarding [Mortgage Access], the Loan, the Mortgaged Property or the Mortgagor of which [Mortgage Access] has knowledge, which occurrence, act, or omission may materially affect Mortgage Access], the Loan, the Mortgaged Property, or the Mortgagor.

Am. Compl. Ex. B-1, § A201(M); see also id. § A210(A) ("If [Mortgage Access] discovers an Event of Default, it should give [RFC] prompt written notice. Such notice should include a written description of the Event of Default."). RFC, however, alleges that Mortgage Access had the "initial responsibility" and the "primary responsibility" for underwriting the loans. Am. Compl. ¶ 20. RFC also alleges that the "types of defects ... included income misrepresentation, employment misrepresentation, owner occupancy

14

misrepresentations, appraisal misrepresentations or inaccuracies, undisclosed debt, and missing or inaccurate documents." Id. ¶ 42. Such defects occur at the time a loan is underwritten, not at some later date. As a result, the court concludes that RFC does not sufficiently allege the breach of a continuing obligation, and such claims are untimely. See Embrace Home Loans, 2014 WL 2766114, at *3. Therefore, dismissal is warranted as to the portion of the breach of warranties claim relating to loans sold or assigned prior to May 14, 2006.

### B.    Indemnification

Mortgage Access also argues that the indemnification claim is untimely. Specifically, Mortgage Access argues that any indemnification obligation was triggered upon Events of Default, which occurred outside of the applicable limitations period. Such an argument is unavailing. Here, the Client Guide reflects that Mortgage Access would indemnify RFC for "all losses, damages, penalties, fines, forfeitures, court costs and reasonable attorneys' fees, judgments, and any other costs, fees and expenses *resulting from* any Event of Default." Am. Compl. Ex. B-1, § A212 (emphasis added). Such language does not indicate that the indemnity obligation accrued upon an Event of Default. Indeed, under Minnesota law, the "statute of limitations in an indemnification case ordinarily is six years after final judgment or settlement." Hernick, 2003 WL 1814876, at *5 (citation

15

omitted). That is, "the right of indemnity does not accrue until the liability of the party seeking indemnity has become finally fixed and ascertained, or until after the claimant has settled or has paid the judgment." Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n, 538 N.W.2d 692, 695 (Minn. 1995) (citation and internal quotation marks omitted). As already explained, the bankruptcy action was filed on May 14, 2012, RFC filed the instant action on December 13, 2013 and the bankruptcy plan became effective on December 17, 2013. Thus, RFC's liability was not fixed upon Events of Default, and the argument that an indemnification claim is barred by the statute of limitations is without merit. As a result, the indemnification claim is timely, and dismissal is not warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   Defendant's motion to dismiss the original complaint [ECF No. 18] is denied as moot.

2.   Defendant's motion to dismiss the amended complaint [ECF No. 39] is granted in part, consistent with this order.

Dated: July 21, 2014

s/David S. Doty
David S. Doty, Judge
United States District Court